### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION
### CIVIL ACTION NO. 1:06CV-00027-TBR
### CRIMINAL ACTION NO. 1:04CR-00025-TBR

JAMES E. SANDERS                                        MOVANT/DEFENDANT

VS.

UNITED STATES OF AMERICA                        RESPONDENT/PLAINTIFF

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND RECOMMENDATION

### BACKGROUND

The movant/defendant, James E. Sanders ("Sanders"), proceeding *pro se* has filed a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255 (DN 71). Sanders has also filed a memorandum and supporting affidavits (DN 71). In total, Sanders sets forth six separate grounds for relief (DN 71, Memorandum at Pages 5-38).

The respondent/plaintiff, United States of America ("United States"), filed a memorandum in opposition (DN 74). Additionally, it filed a motion to dismiss Sanders' § 2255 motion (DN 75). Sanders filed a reply in support of his § 2255 motion and a response to the United States' motion to dismiss (DN 83). After reviewing the memoranda, the District Judge ordered the United States to address: (1) Sanders' claim that his counsel was ineffective for failing to file a notice of appeal despite his specific request to do so; and (2) what effect the waiver provision in the plea agreement would have on that claim (DN 87). The United States responded by filing a supplemental memorandum and motion to dismiss Sanders' § 2255 motion (DN 89, 90). Sanders

filed a memorandum in response (DN 91, 92).

In a memorandum and order entered August 31, 2007, the District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), for an evidentiary hearing, if deemed appropriate, and findings of fact and recommendations for disposition (DN 87). The undersigned subsequently appointed counsel for Sanders and scheduled an evidentiary hearing (DN 94, 98). The scope of the evidentiary hearing was limited to Sanders' claim that counsel failed to file a notice of appeal despite his specific request to do so.

The undersigned conducted the evidentiary hearing on April 23, 2008 (DN 100, 101). Sanders was present, in custody, and represented by CJA panel attorney Ross T. Turner (DN 100, 101). Assistant United States Attorney Larry Fentress was present for the United States (DN 100, 101). During the evidentiary hearing, Sanders presented testimony from his trial counsel Stewart Wheeler, his sister-in-law Brandy Sanders, his mother Thelma Jane Hagan, his brother Randy Sanders, and himself (DN 100, 101). At the close of evidence, counsel for both parties presented oral arguments (DN 100, 101). The undersigned concludes this matter is now ripe for determination.

## FINDINGS OF FACT

On July 7, 2004, a federal grand jury in the Western District of Kentucky issued a multiple count indictment against Sanders and Larry Dale Davis ("Davis") (DN 4). Count 1 charged Sanders and Davis with knowingly and intentionally possessing with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine (DN 4). Count 2 charged Sanders and Davis with carrying firearms during and in relation to a drug

trafficking crime (DN 4). Count 4 charged Sanders with possessing a firearm after having been convicted of a felony (DN 4). Counts 5 and 6 are forfeiture counts (DN 4).

After several continuances and an adverse ruling on his motion to suppress evidence (DN 41), Sanders entered into a plea agreement with the United States (DN 51). In pertinent part the plea agreement reads as follows:

> "The Defendant knowingly and voluntarily waives the right (a) to directly appeal his conviction and the resulting sentence pursuant to Fed.R.App.P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise for any reason, including ineffective assistance of counsel. ..."

(DN 51 at Paragraph 13). Immediately above Sanders' signature is an attestation that he read the plea agreement, carefully reviewed every part of it with his attorney, fully understood it and voluntarily agreed to it (DN 51 at Page 13).

The undersigned conducted a change of plea hearing on March 29, 2005 (DN 73). After Sanders was sworn by the clerk of the court, questioning revealed that Sanders functions at a third grade level (DN 73 at Pages 4-5). Questioning further revealed that defense counsel read the entirety of the plea agreement to Sanders, Sanders discussed the plea agreement with defense counsel, and Sanders understood the plea agreement (DN 73 at Pages 5-6).

Questioning by the undersigned also revealed that Sanders is bipolar, has depression and attention deficit hyperactivity disorder (DN 73 at Pages 6-7). Sanders reported he had not received treatment for these conditions for over a year preceding the change of plea hearing (DN 73 at Pages 6-7). Despite these conditions and not getting a good night's sleep, Sanders assured the undersigned that his ability to understand what he hears and says was not compromised (DN 73 at Pages 7-8). Additionally, Sanders confirmed that he was currently not under the influence of alcohol

3

or any type of drugs (DN 73).  Moreover, Sanders confirmed that he understood why he was in court that day (DN 73 at Page 8).  Finally, the Assistant United States Attorney and defense counsel both confirmed they did not have any doubt that Sanders was competent to plead guilty (DN 73 at Page 8).

Next, Sanders confirmed that he had enough time to talk with his attorney about the case and his guilty plea (DN 73 at Page 8).  Moreover, Sanders confirmed that he was satisfied with the advice he had received from defense counsel (DN 73 at Page 9).

Next, the undersigned established that Sanders understood the rights he would be waiving by pleading guilty to the charges (DN 73 at Pages 9-11).  Further, the undersigned established that Sanders understood each of the charges against him (DN 73 at Pages 11-15).

At the undersigned's request, the Assistant United States Attorney stated the maximum possible penalty for each charge against Sanders (DN 73 at Pages 15-18).  Sanders then confirmed that he understood he could be sentenced to a maximum of life imprisonment and a total fine of $4,750,000.00 (DN 73 at Page 18).  Further, Sanders confirmed he understood, despite the United States' agreement to argue for a 15 year sentence, the District Judge had the discretion to impose a 20 year mandatory minimum sentence (DN 73 at Page 18).

Sanders reported that he had spoken with his attorney about how the federal sentencing guidelines might apply in his case (DN 73 at Page 19).  He confirmed an understanding that the District Judge would determine the guideline sentence after considering the pre-sentence report and the objections by parties (DN 73 at Pages 19-20).  Moreover, Sanders indicated he understood the District Judge might impose a sentence different from any estimate that his attorney had provided (DN 73 at Page 20).

In response to questions from the undersigned, Sanders confirmed his understanding that under the terms of the plea agreement he was giving up his right to file a direct appeal and to collaterally attack his conviction and sentence (DN 73 at Page 21). Notably, the undersigned took the time to confirm that Sanders understood what a collateral attack motion was and by giving up the right to file such a motion he would not be able to later argue he had received ineffective assistance from defense counsel (DN 73 at Page 21).

Next, through questioning the undersigned confirmed that Sanders understood he would be losing certain civil rights by pleading guilty to the charged felony offenses (DN 73 at Page 23). He also confirmed that he understood all the possible consequences of a guilty plea in this case (DN 73 at Page 23).

At the undersigned's request, the Assistant United States Attorney summarized the terms and conditions of the plea agreement (DN 73 at Pages 23-28). Thereafter, Sanders confirmed he listened very closely and agreed with that summary of the terms of the plea agreement (DN 73 at Page 28). Further, he indicated he did not have any questions or comments that he wished to make at that time concerning the content of the plea agreement (DN 73 at Pages 28-29). The Assistant United States Attorney also provided a summary of the facts that the Government would be prepared to prove at trial as to each of the charges in the indictment against Sanders (DN 73 at Pages 29-30).

Sanders confirmed his understanding that if he received a sentence more severe than he expected he was bound by his guilty plea (DN 73 at Page 29). Further, Sanders confirmed there were no promises (other than what was set forth in the plea agreement) or threats by anyone to get him to plead guilty to the charges in the indictment (DN 73 at Page 29).

Next Sanders confirmed that he still desired to enter a plea of guilty to the charges (DN 73 at Page 30). Further, Sanders indicated he understood everything that had been said and did not have any questions (DN 73 at Page 30). Sanders confirmed he was guilty of each of the charged crimes and he did all of the things the Government said he did in the commission of those crimes (DN 73 at Page 31). Sanders then entered pleas of guilty to Counts 1, 2, and 4 of the indictment (DN 73 at Page 31). Moreover, as to Counts 5 and 6, Sanders acknowledged the right of the United States to seize the property (DN 73 at Page 31). The undersigned then found Sanders to be fully competent and capable of entering into an informed plea and that his plea of guilty was knowing, voluntary and supported by an independent basis in fact as to each of the essential elements of the charged offenses (DN 73 at Pages 31-32).

Submitted in support of his § 2255 motion are affidavits from Sander's brother Randy Sanders, his sister-in-law Brandy Sanders, and his mother Thelma Sanders (DN 71, Exhibits 1-3). All affiants indicate they were present in the courtroom when Sanders was sentenced (DN 71, Exhibits 1-3). All three affiants indicate immediately after the sentence was imposed they overheard Sanders direct his attorney to file an appeal; the attorney respond that an appeal would be filed; and the attorney promise to stop by the jail later that day to discuss the appeal with Sanders (DN 71, Exhibits 1-3).

During the evidentiary hearing on April 23, 2008, Stewart Wheeler testified he has handled thousands of criminal cases in his 30 years of practicing law (DN 101 at Pages 7-8). He believes less than 20 of those cases have been before the federal court (DN 101 at Pages 7-8).

Based on his efforts prior to the change of plea hearing and the Court's efforts during that hearing, Mr. Wheeler has no doubt that Sanders understood he was giving up his right to

6

challenge, by appeal or collateral attack motion, his conviction and sentence under the plea agreement (DN 101 at Pages 18, 19, 21, 24, 25). Mr. Wheeler is certain that Sanders understood despite the sentencing recommendation in the plea agreement the District Judge was ultimately responsible for determining the length of his sentence (DN 101 at Pages 19-20). Finally, Mr. Wheeler emphatically testified that after the sentencing hearing he was not asked or directed to file an appeal by Sanders or a member of Sanders' family (DN 101 at Pages 20, 25, 28).

Brandy Sanders testified that she is married to Sanders' brother, Randy (DN 101 at Page 31). Notably, despite what is set forth in her affidavit (DN 71, Exhibit 2 at Page 3), Brandy Sanders testified she was not in the courtroom during the sentencing hearing and did not overhear a conversation between Sanders and Mr. Wheeler about filing an appeal (DN 101 at Pages 31, 36, 37-38, 39, 40). In contrast to her affidavit, Brandy Sanders testified that after the sentencing hearing she was standing in the hallway and overheard Mr. Wheeler assure Randy that he would meet with Sanders at the jail and then file an appeal (DN 101 at Pages 31, 32, 47, 48, 50). Brandy Sanders also testified that she had a follow-up telephone conversation with Mr. Wheeler later that day and he indicated to her that he had not seen Sanders at the jail and had not yet filed an appeal (DN 101 at Page 32). Brandy Sanders also testified that she and other family members went to Wheeler's office approximately a week later and they were told it was "too late" to file an appeal (DN 101 at Page 33).

Thelma Hayden testified that she is Sanders' mother and her last name was Sanders at the time she signed her affidavit (DN 101 at Pages 40-41). Ms. Hayden testified that she and other family members went to Mr. Wheeler's office about a week after the sentencing and they were told it was too late to file an appeal (DN 101 at Pages 41-42). Notably, in contrast to what is set

forth in her affidavit, Ms. Hayden testified she did not attend the sentencing hearing and did not overhear a conversation between Sanders and Mr. Wheeler about filing an appeal (DN 101 at Page 42, 45).

Randy Sanders testified that he is Sanders' brother (DN 101 at Page 46). He testified that during the sentencing hearing he sat in the back of the courtroom, behind his brother and Mr. Wheeler (DN 101 at Page 47). Contrary to his affidavit (DN 71, Exhibit 1 at Page 2-3), Randy Sanders testified that he overheard Sanders ask Mr. Wheeler to file an appeal about 20 minutes or so before the Judge announced the sentence (DN 101 at Pages 47, 48, 50, 51, 52, 53, 54, 58-59). Further, Randy Sanders testified that Mr. Wheeler directed Sanders to "sssh" and to let him finish this hearing (DN 101 at Pages 47, 48, 50). Randy Sanders further testified that he did not overhear any conversations between Sanders and Mr. Wheeler at the end of the sentencing hearing (DN 101 at Page 50). Randy Sanders testified that after the sentencing hearing he met with Mr. Wheeler in the hallway and Mr. Wheeler indicated he was going straight to the office to file an appeal (DN 101 at Pages 47, 48, 50).

Sanders' testimony during the evidentiary hearing contradicted his responses during the change of plea hearing. For example, Sanders testified that Mr. Wheeler only went over parts of the plea agreement with him and he understood that he would receive a 15 year sentence (DN 101 at Pages 60-61, 62, 64). Sanders also testified that Mr. Wheeler never really discussed the waiver provision in the plea agreement pertaining to his right to file an appeal and right to collaterally attack the conviction and sentence (DN 101 at Pages 61, 63). Sanders further testified that during the change of plea hearing he did not understand what was going on and thought he could later on appeal (DN 101 at Pages 62, 63, 65). Sanders acknowledged that during the change of plea hearing

8

he probably did answer "yes" when asked if he understood he would be giving up his right to file a direct appeal (DN 101 at Page 80).  Sanders also acknowledged that during the change of plea hearing he probably was advised the District Judge could impose up to a 20 year sentence (DN 101 at Pages 74-75, 80).  However, Sanders claimed not to have understood everything that went on and everything he was told during the change of plea hearing (DN 101 at Pages 70, 74-77).

Sanders testified that immediately after the sentencing, while they were still sitting at the defense table, he told Mr. Wheeler that he wanted to appeal because the sentence was not right (DN 101 at Page 65-66, 67, 71, 78, 79).  Sanders recalled that Mr. Wheeler did indicate he would file an appeal and then directed Sanders to "sssh" so he could hear the District Judge (DN 101 at Pages 66-67).  However, Sanders also testified that he had been transferred from the courtroom to the holding cell before he figured out a 248 month sentence was 20 years, not 15 years (DN 101 at Pages 79, 80).  When this contradiction was brought to his attention, Sanders explained that he asked Mr. Wheeler to file an appeal because it sounded as though things were not going the way he had expected (DN 101 at Pages 66, 80).  Sanders testified that Mr. Wheeler was supposed to meet him in the holding cell to discuss his appeal but Mr. Wheeler left the courthouse (DN 101 at Pages 67, 68).  Sanders also recalled that after he was returned to the jail he called Mr. Wheeler to request an appeal be filed (DN 101 at Page 68).

In Ground 1 Sanders argues he did not knowingly and voluntarily enter a guilty plea to Count 1 in the indictment (DN 71, Memorandum at pages 5-18).  In Ground 2 he argues he did not knowingly and voluntarily enter a guilty plea to Count 2 in the indictment (DN 71, Memorandum at Pages 19-24).  In Ground 3 Sanders argues his decisions to plead guilty and enter into a plea agreement were not knowing and voluntary (DN 71, Memorandum at Pages 24-33).  In

Ground 4 he argues that his Fifth Amendment right to due process was violated because the United States breached the plea agreement and his Sixth Amendment right to effective assistance of counsel was violated because counsel failed to challenge the breach (DN 71, Memorandum at Pages 33-34). In Ground 5 Sanders argues his Sixth Amendment right to effective assistance of counsel was violated because counsel failed to correct the erroneous guideline level set forth in his plea agreement (DN 71, Memorandum at Pages 34-35).   In Ground 6 Sanders argues his Sixth Amendment right to effective assistance of counsel was violated because counsel failed to comply with his request to file a notice of appeal (DN 71, Memorandum at Pages 36-38).

<u>CONCLUSIONS OF LAW</u>

A

In order to obtain relief under 28 U.S.C. § 2255 on the basis of non-constitutional error, the record must reflect a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994); <u>United States v. Todaro</u>, 982 F.2d 1025, 1028 (6th Cir.) (*per curiam*), <u>cert.</u> <u>denied</u>, 508 U.S. 943 (1993).  In order to obtain relief under § 2255 on the basis of a Constitutional error, the record must reflect an error of Constitutional magnitude that has a substantial and injurious effect or influence on the proceedings.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-638 (1993); <u>see</u> <u>also</u> <u>United States v.Ross</u>, 40 F.3d 144,146 (7th Cir. 1994).

B

The undersigned will first address the motion to dismiss filed by the United States.

10

The motion is premised on the waiver provision within the plea agreement.  In pertinent part the plea agreement reads Sanders "knowingly and voluntarily waives the right ... to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise for any reason, including ineffective assistance of counsel" (DN 51, Plea Agreement at Paragraph 13). Sanders responds to the motion by arguing his guilty plea and his waiver were not knowing or voluntary because of omissions by the Court during the change of plea hearing and ineffective assistance of counsel prior to and during the change of plea hearing.

Waiver of the right to collaterally attack a conviction and sentence is enforceable if it is knowingly, intelligently, and voluntarily made.  In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007); Davila v. United States, 258 F.3d 448, 450-451 (6th Cir. 2001); Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999).  Further, "[w]hen a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring [sic] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."  Davila, 258 F.3d at 451. Here, Sanders challenges the very validity of both his guilty plea and waiver.  The undersigned will now address the issue of whether the plea and waiver were knowing and voluntary.

A plea of guilty is valid if entered voluntarily, knowingly, and intelligently; its validity is determined under the totality of the circumstances.  Brady v. United States, 397 U.S. 742, 749 (1970); Boykin v. Alabama, 395 U.S. 238, 242-244 (1969).  The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of a guilty plea. Brady, 397 U.S. at 755.  The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among the alternatives.  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  Further, Rule 11 requires that a defendant pleading guilty

11

understands his applicable Constitutional rights, that his plea of guilty is voluntary with a full understanding of the nature of the crime charged and the consequences of his guilty plea, and that a factual basis exists for the crime to which the plea is being offered.  United States v. Goldberg, 862 F.2d 101, 106 (6th Cir. 1988).

In recognition of Sanders' limited education and mental health history, the undersigned went to great lengths to insure that he understood the provisions of the plea agreement, the rights he was waiving, the charges in the indictment, the sentence he was facing in the absence of the plea agreement, and the consequences of his plea in terms of the possible length of sentence, supervised release, and fines (DN 73 at Pages 9-30).  Moreover, Sanders clearly indicated to the undersigned that he understood the charges and the consequences of his plea (DN 73 at Pages 9-30). Additionally, the plea agreement and the Assistant United States Attorney provided a factual basis for each crime to which a plea was being offered (DN 73 at Pages 25-26, 29-30).  Further, Sanders admitted the essential elements of each charged offense (DN 73 at Pages 24-31).

Notably, the undersigned specifically brought Sanders' attention to the waiver provision within the plea agreement (DN 73, at Pages 20-21).  The exchange between the undersigned and Sanders reads as follows:

> "THE COURT: Mr. Sanders, do you understand you're giving up the right to a direct appeal in this case?
> THE DEFENDANT:  Yes, sir.
> THE COURT: Do you understand that you are giving up your right to later attack the sentence given you by this Judge under what is called a collateral attack, or a - - usually these take the form of petitions for writs of habeas corpus.  Do you understand this?
> THE DEFENDANT:  Yes, sir.
> THE COURT: Do you understand that you're not going to be able to later on argue that you received ineffective assistance of Mr. Wheeler in representing you in this proceeding; that the right to claim that later on by agreement is gone?

12

THE DEFENDANT: Yes, sir."

(DN 73 at Page 21).

After considering the totality of the circumstances, the undersigned concludes Sanders entered a valid guilty plea.  The transcript of the change of plea hearing clearly indicates that Sanders knowingly, voluntarily, and intelligently entered pleas of guilty to each of the charges in the indictment.  Furthermore, the transcript indicates that the undersigned, by complying with the requirements of Fed.R.Crim.P. 11, properly determined that Sanders knowingly and voluntarily entered his guilty plea.  Moreover, it is apparent from the transcript of the change of plea hearing that the undersigned complied with Fed.R.Crim.P. 11(b)(1)(N), which requires that, before Sanders' guilty plea is accepted, the undersigned must inform Sanders of, and determine that he understands, the terms of the plea agreement provision waiving the right to appeal and collaterally attack the conviction and sentence.  In re Acosta, 480 F.3d at 422-423.  In sum, the undersigned finds both the waiver and the guilty plea are valid and Sanders may not collaterally attack his conviction and sentence under 28 U.S.C. § 2255.

C

Sanders also challenges the validity of his guilty plea and waiver by arguing they are the product of ineffective assistance of counsel.  His argument is meritless.

To establish his guilty plea and waiver were involuntary as a result of ineffective assistance of counsel, Sanders must demonstrate both (1) that counsel's representation fell below

13

an objective standard of reasonableness,[1] and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Notably, the Court need not conduct this two-part inquiry in the order identified above or even address both parts if Sanders makes an insufficient showing on one.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  For example, if the Court determines that Sanders has failed to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient.  Id.

Essentially, Sanders is arguing his guilty plea and waiver were involuntary because of what defense counsel failed to tell him before the change of plea hearing.  However, careful review of the change of plea transcript clearly indicates that each of the alleged omissions by defense counsel were remedied by the undersigned's efforts to make sure that Sanders understood the provisions of the plea agreement, the rights he was waiving, the charges in the indictment, the sentence he was facing in the absence of the plea agreement, the factual basis for each crime to which a plea was being offered, and the consequences of his plea in terms of the possible length of sentence, supervised release, and fines (DN 73 at Pages 9-30).  Thus, Sanders clearly cannot demonstrate there is a reasonable probability that, but for trial counsel's alleged omissions, he would not have pleaded guilty and would have insisted on going to trial.  Lockhart, 474 U.S. at 58-59.

---

[1]"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689-690 (1984).  Due to the difficulties inherent in making the performance evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'".  Id. at 689 (citation omitted).

Moreover, in light of what Sanders knew about his sentencing exposure when he accepted the plea offer and entered his plea, his self-serving post-conviction claims are insufficient to demonstrate there is a "reasonable probability" that, but for defense counsel's alleged omissions, he would not have pleaded guilty under the plea agreement and would have insisted on going to trial.

In regard to the performance component under Lockhart, the undersigned finds more credible defense counsel's testimony regarding the substance of discussions with Sanders about the plea agreement prior to Sanders executing the document.  Defense counsel's testimony and Sanders' responses to questions during the change of plea hearing indicate that counsel's representation did not fall below an objective standard of reasonableness.  Lockhart, 474 U.S. at 58-59.  In sum, the undersigned concludes there is no merit to Sanders' contention that his guilty plea and the waiver provision in the plea agreement are the product of ineffective assistance of counsel.  Since Sanders knowingly, intelligently, and voluntarily waived his right to collaterally attack his conviction and sentence, the Court should dismiss his § 2255 motion.

## D

The undersigned will now address Sanders' claim that defense counsel was ineffective for failing to file a notice of appeal despite his specific request immediately after the sentencing hearing (DN 71, Memorandum at Page 36-38).  In support of this claim Sanders submitted affidavits from three family members who claimed they were in the courtroom and overheard Sanders direct defense counsel to file an appeal (DN 71, Exhibits 1-3).  In its motion to dismiss, the United States argues that Sanders is precluded from bringing this claim of ineffective assistance of counsel because there is a valid waiver of the right to collaterally attack his conviction

and sentence (DN 89, 90).

   The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unresponsible." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriquez v. United States, 395 U.S. 327, 329-330 (1969)); see also Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998) ("[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). Moreover, when defense counsel fails to file a requested appeal, a defendant is entitled to a resentencing and to an appeal without having to show that his appeal would likely have had merit. Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriquez, 395 U.S. at 329-330); Ludwig, 162 F.3d at 459 (Since prejudice is presumed the probability of success on appeal is not a consideration).

   Notably, the United States has not cited nor has the undersigned found any case law addressing what effect, if any, waiver of the right to appeal or to file a motion under § 2255 has on this type of ineffective assistance of counsel claim. For this reason, the undersigned scheduled an evidentiary hearing to develop facts related to the issue of whether Sanders specifically instructed defense counsel to file a notice of appeal.

   Testimony from Mr. Wheeler clearly indicates that Sanders did not specifically instruct him to file an appeal at the close of the sentencing hearing or any time thereafter. In sharp contrast to what is set forth in their affidavits (DN 71, Exhibits 2 and 3), testimony from Sanders' sister-in-law and mother indicate they could not have overheard Sanders' specifically instruct Mr. Wheeler to file an appeal because they were not in the courtroom at the close of the sentencing hearing. In contrast to what is set forth in his affidavit (DN 71, Exhibit 1), Randy Sanders testified

16

he overheard Sanders instruct defense counsel to file an appeal approximately 20 minutes before the Court imposed its sentence.  Further, Randy Sanders' testimony contradicts Sander's testimony that he specifically requested defense counsel file an appeal immediately after the trial court imposed the sentence.

Sanders' testimony during the evidentiary hearing was itself inconsistent.  For example, he indicated the reason he immediately requested counsel file an appeal was the 20 year sentence he received.  However, Sanders also testified that he did not realize he received a 20 year sentence until after he and defense counsel had parted company.  Additionally, Sanders testified about a telephone conversation with defense counsel that occurred after his return to the county jail.  Essentially, Sanders indicated when he asked about his appeal defense counsel cut him off and began talking about the weaknesses and difficulties of Sanders' case (DN 101 at Page 68).

After considering the totality of the evidence, the undersigned finds most credible testimony from Mr. Wheeler regarding what did and did not occur during and after the sentencing hearing.  Since the testimony from Sanders and his family members is fraught with inconsistencies and contradicts the sworn affidavits submitted in support of the § 2255 motion, the undersigned has discounted that evidence.

After considering all of the evidence in the record, the undersigned finds no merit to Sanders' claim that defense counsel disregarded his specific request to file a notice of appeal.  Thus, this Court need not determine whether the holding in Rodriquez and its progeny applies despite a valid waiver of Sanders' right to directly appeal[2] and collaterally attack his conviction and sentence.

_____

[2]In the preceding sections the undersigned has addressed the validity of the guilty plea and Sanders' waiver of his right to collaterally attack his conviction and sentence.  The plea agreement also included a provision whereby Sanders waived his right to directly appeal his

17

E

Since the undersigned recommends the Court dismiss the § 2255 motion on a procedural ground, Sanders must satisfy both prongs of the test articulated in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-485 (2000), to be entitled to a Certificate of Appealability.  To satisfy the first prong of the <u>Slack</u>, Sanders must demonstrate "jurists of reason would find it debatable whether the petition stats a valid claim of the denial of a Constitutional right."  <u>Id.</u> at 484.  To satisfy the second prong, Sanders must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id.</u>  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further."  <u>Id.</u>  Notably, the Court need not conduct the two-pronged inquiry in the order identified or even address both parts if Sanders makes an insufficient showing on one part.  <u>Id.</u> at 485.  For example, if the Court determines that Sanders failed to satisfy the procedural prong, then it need not determine whether the Constitutional prong is satisfied.  <u>Id.</u>

Here, for the reasons set forth above, there is a plain procedural bar to Sanders' proposed claims.  Further, his attempt to challenge the validity of his waiver is specious at best.

---

conviction and sentence (DN 51 at Paragraph 13).  Of particular relevance is the following excerpt from the change of plea hearing:
> "THE COURT: Mr. Sanders, do you understand you're giving up your right to a direct appeal in this case?
> THE DEFENDANT: Yes, sir."

(DN 73 at Page 21).  In light of this and the above findings related to the validity of Sanders' waiver of the right to collaterally attack his conviction and sentence, the undersigned concludes that Sanders knowingly and voluntarily waived his right to directly appeal his conviction and sentence.

Therefore, the undersigned concludes that jurists of reason would not find it debatable whether Sanders is procedurally barred from proceeding with his § 2255 motion.  For the above reasons, the undersigned does not recommend issuance of a Certificate of Appealability.

<u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that Sanders' § 2255 motion be DISMISSED and that the Certificate of Appealability be DENIED.

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be filed within ten (10) days or further appeal is waived.  <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, U.S. 140 (1984).

Copies:      James E. Sanders, *pro se*
               Counsel of Record